# In the United States Court of Federal Claims

No. 12-486 C

(Filed June 6, 2013)

| | | |
|---|---|---|
| * * * * * * * * * * * ** | * | |
| PHILIP L. ANDERSON, *et al.*, | * | |
| | * | |
| *Plaintiffs*, | * | Military Pay; Nonjusticiable |
| | * | Challenge to Merits of Allegedly |
| v. | * | Wrongful Discharges; No Violation |
| | * | of Statute, Regulation or Procedure; |
| THE UNITED STATES, | * | Rights to Due Process and Equal |
| | * | Protection Under the Fifth |
| *Defendant*. | * | Amendment Not Violated. |
| * * * * * * * * * * * * | * | |

*Elvin W. Keller*, Oklahoma City, OK, for plaintiffs.

*Daniel G. Kim*, United States Department of Justice, with whom were *Stuart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, *Bryant G. Snee*, Deputy Director, Washington, DC, for defendant. *Lieutenant Commander Andrew E. Carmichael*, Office of the Judge Advocate General, United States Navy, Washington, DC, of counsel.

_____

## OPINION

_____

**Bush**, *Judge*.

This military pay case is before the court on defendant's motion to dismiss, or, in the alternative, motion for judgment upon the administrative record, filed under Rules 12(b)(1), 12(b)(6) and 52.1 of the Rules of the United States Court of Federal Claims (RCFC). Defendant's motion has been fully briefed and is ripe for

decision. Although plaintiffs requested oral argument, there were no ambiguities in the legal issues presented by this case which would have been resolved by oral argument presented by counsel. For the reasons stated below, defendant's motion is granted.

## BACKGROUND[1]

In this suit, approximately three hundred plaintiffs challenge their discharges from the United States Navy on or before September 1, 2012.[2] Plaintiffs were serving as enlisted personnel in pay grades E5, E6, and E7 until an Enlisted Retention Board (ERB), which was convened in 2011, recommended that they should be discharged. Compl. at 4-5.[3] Relevant excerpts from a March 23, 2011 Secretary of the Navy (Secretary) memorandum titled "Notification of Intent to Convene a Quota-Based Enlisted Retention Board" are reproduced here:

> Navy will be challenged to reduce enlisted manning to
> meet future planned end strength controls due to record
> high retention in the current economic environment.
> While Navy will continue to exercise the full extent of
> existing voluntary and involuntary measures to size and
> align the force, more aggressive actions will be required

---

[1] The facts upon which the parties rely are undisputed unless otherwise noted. The administrative record (AR) filed by defendant contains exhibits which are indexed, tabbed and consecutively paginated. Plaintiffs' exhibits are not consecutively paginated, and, in many cases, lack pagination of any sort. Due to these deficiencies, *see* RCFC 5.4(a)(2)(G), 5.5(c)(6), and plaintiffs' often incomplete citation to exhibits, the court was unable to readily locate some of the passages referenced by plaintiffs. *See, e.g.*, Compl. at 7 (citing an otherwise unidentified "paragraph 4A(3)" in an exhibit of fifty-three pages); Pls.' Resp. at 4, 22 (quoting unspecified passages in an exhibit of fifty-three pages). Although the court's analysis of plaintiffs' legal arguments was not hampered in this instance, plaintiffs' counsel would be well advised to pay closer attention to filing rules and to citation conventions that facilitate the identification of the exhibit pages, or paragraphs within those pages, upon which counsel intends to rely.

[2] Plaintiffs have also filed a motion to certify this suit as a class action. Because this case must be dismissed for the reasons stated in this opinion, plaintiffs' class action motion is denied as moot.

[3] All references to the complaint in this case are to the third amended complaint filed November 2, 2012.

to achieve balance and fit.  Current analysis shows an
FY12 requirement for approximately 3,000 additional
losses beyond that which can be expected with our
existing force-shaping measures.  I am therefore advising
you of my intent to conduct an FY12 Enlisted Retention
Board (ERB) . . . .

I intend to convene the ERB in August, 2011 and
estimate that approximately 16,000 Sailors will be
eligible for the board.  The board will utilize quotas to
identify approximately 3,000 Sailors whose separation is
in the best interest of the Navy and will focus in those
ratings [*i.e.*, job specialties] that are overmanned.  Sailors
in pay grades E4-E9 with between 7 and 15 years of
service will be eligible for the board.

Executing a board of this nature is essential at this time to
optimize the quality of the force, shape our end strength
to meet future challenges, and relieve pressure on
Perform-to-Serve (PTS).[4]  It will also enable the Navy
to meet FY-12 end strength targets and to ensure we
retain our best with a balance of seniority, skills, and
experience.

AR at 1.

Thus, unlike most wrongful discharge suits brought by individual
service-members before this court, this action challenges a large-scale reduction in
the number of enlisted personnel serving in the Navy.  Two thousand nine hundred

---

[4]/ Perform-to-Serve "is a centralized reservation system used to manage reenlistments"
in the Navy.  Navy Personnel Command, at
http://www.public.navy.mil/bupers-npc/organization/
npc/publicaffairs/news/Pages/2010/NavyAnnouncesNewRequirementsforPerformtoServe.aspx
(last visited May 17, 2013).

and forty-six enlisted personnel were discharged as a result of the ERB process.[5]
Def.'s Mot. at 9; Pls.' Resp. at 1.  The court reserves further discussion of the ERB
process, and plaintiffs' specific challenges to their discharges, for the analysis
section of this opinion.

Plaintiffs' suit in this court was filed on August 2, 2012 and originally
sought a preliminary injunction of plaintiffs' discharges.  The court explained that
injunctive relief of that nature was not available in this forum.  *See* Order of
August 23, 2012.  Plaintiffs' remaining requests for relief include reinstatement "to
serve their tour[s] of duty," or, in the alternative, damages related to pay,
allowances, benefits and "pension monies" incident to their tours of service
terminated by the Navy.  Compl. at 11.

On October 15, 2012, defendant filed its motion to dismiss, or, in the
alternative, motion for judgment upon the administrative record.  Plaintiffs
responded on January 14, 2013, and attached several exhibits to their response
brief (Pls.' Exs. A-L).  Defendant's reply brief, filed February 8, 2013, addressed
the arguments in plaintiffs' response brief and also suggested that the court strike
certain exhibits attached to plaintiffs' response brief (Pls.' Exs. B, E, G, H, and K).
Def.'s Reply at 9-10.

After two and a half months had transpired, plaintiffs filed a motion to
supplement the administrative record on April 26, 2013, which has been fully
briefed.  Attached to that motion were four exhibits (Pls.' Supp. Exs. A-D).[6]
Plaintiffs' motion did not specifically address the contested exhibits that were
attached to plaintiffs' response brief (*i.e.*, those that were challenged by defendant),
but instead argued that plaintiffs' newly-discovered supplemental exhibits should
augment the administrative record in this case.  *See* Pls.' Mot. at 1 (requesting leave

---

[5]/ For the purposes of this opinion, the term "ERB process" refers inclusively to the
retention and non-retention recommendations of that board, as well as the subsequent discharges
of plaintiffs.

[6]/ The exhibits attached to the complaint, plaintiffs' response to defendant's dispositive
motion, and plaintiffs' motion to supplement the administrative record are all identified as
Exhibit A, Exhibit B, etc.  To reduce confusion, the court cites exhibits attached to the complaint
as Compl. Ex. A, Compl. Ex. B, etc.; the court cites exhibits attached to plaintiffs' response brief
as Pls.' Ex. A, Pls.' Ex. B, etc.; the court cites exhibits attached to plaintiffs' motion as Pls.'
Supp. Ex. A, Pls.' Supp. Ex. B, etc.

to file "newly occurring and discovered evidence" that was attached to the motion). The parties' dispute over supplementation of the administrative record will be discussed in the analysis section of this opinion.

## DISCUSSION

### I.      Standards of Review

#### A.      RCFC 12(b)(1)

In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). However, plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)), and must do so by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748 (citations omitted). If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

#### B.      RCFC 12(b)(6)

When considering a motion to dismiss under RCFC 12(b)(6), "the allegations of the complaint should be construed favorably to the pleader." *Scheuer*, 416 U.S. at 236. The court must inquire, however, whether the complaint meets the "plausibility" standard described by the United States Supreme Court, *i.e.*, whether it adequately states a claim and provides a "showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560, 563 (2007) (citations omitted). It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

#### C.      RCFC 52.1

RCFC 52.1(c) provides for judgment on the administrative record. To review a motion under RCFC 52.1(c), the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). The court must make fact findings where necessary. *Id.* The resolution of a motion filed under RCFC 52.1(c) is akin to an expedited trial on the paper record. *Id.*

## D.   Supplementation of the Administrative Record

In *Axiom Resource Management, Inc. v. United States*, 564 F.3d 1374 (Fed. Cir. 2009), the United States Court of Appeals for the Federal Circuit identified the acceptable circumstances under which an administrative record may be supplemented. The *Axiom* panel criticized a decision by this court which permitted supplementation of the administrative record in a bid protest, and criticized the trial court's over-broad reliance on *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989), a decision which provides a list of justifications for the supplementation of the administrative record of an agency action. *Axiom*, 564 F.3d at 1379-81. *Axiom*, the seminal case on record supplementation in this circuit, is precedent binding on this court.

The court notes that the *Axiom* panel adopted a restrictive standard for supplementation of the administrative record, and favorably cited *Murakami v. United States*, 46 Fed. Cl. 731 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005). *Axiom*, 564 F.3d at 1380. The *Axiom* standard for supplementation of the administrative record is a direct quotation from *Murakami*, stating that "supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" *Id.* (quoting *Murakami*, 46 Fed. Cl. at 735). The Federal Circuit relied on the cases cited by this court in *Murakami* to conclude that "[t]he purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'" *Id.* (quoting *Murakami*, 46 Fed. Cl. at 735 and citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). The thrust of the *Axiom* decision, and *Murakami*, is that this court must exercise restraint when considering whether or not to supplement the administrative record. *See id.* (favoring a "more restrictive approach" and questioning the vitality of *Esch*) (citations omitted); *Murakami*, 46 Fed. Cl. at 735 (stating that the construction of

6

the *Esch* justifications for allowing supplementation of an administrative record should be "'extremely limited'") (citations omitted).

## II.   Analysis

### A.   Jurisdiction

Pursuant to the Tucker Act, the United States Court of Federal Claims has jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2006). The Tucker Act, however, "does not create any substantive right enforceable against the United States for money damages. The Court of Claims has recognized that the Act merely confers jurisdiction upon it whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976) (citation omitted). A plaintiff coming before the United States Court of Federal Claims, therefore, must also identify a separate provision of law conferring a substantive right for money damages against the United States. *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) (citing *Testan*, 424 U.S. at 398).

### 1.   Pay and Allowances

In the present case, plaintiffs allege that the Military Pay Act, 37 U.S.C. § 204 (2006), provides the money-mandating provision of law for their pay and associated allowances claims. Pls.' Resp. at 11. Claims for back pay based on § 204 are within the jurisdiction of this court. *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006). Claims for allowances incident to active-duty military service are also typically within the jurisdiction of the court when brought in a wrongful discharge suit. *E.g.*, *Miglionico v. United States*, 108 Fed. Cl. 512, 520 (2012). Defendant does not contest the court's jurisdiction over plaintiffs' back pay and allowances claims. *See* Def.'s Mot. at 10 (citing *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997)). Thus, jurisdiction lies for plaintiffs' pay and allowances claims.

### 2.   Injunctive Relief to Prevent Discharges

Plaintiffs' third amended complaint continues to request an injunction preventing the discharges of plaintiffs scheduled to occur no later than September 1, 2012, despite the fact that this version of the complaint was filed on November 2, 2012.  Compl. at 11.  As defendant notes, even if plaintiffs' request for relief were not moot, the court lacks jurisdiction over this type of injunctive relief in a military pay case.  *See* Def.'s Mot. at 11 (citing *Anderson v. United States*, 21 Cl. Ct. 143, 144 (1990)).  Plaintiffs appear to have abandoned this particular request for relief, which was expressed in Count VIII of the complaint; in any event, this claim, and Count VIII, must be dismissed for lack of jurisdiction.[7]

### 3.      Contract Claim

Plaintiffs, in Count IV of the complaint, present what appears to be a claim based on some type of contract with the United States.  *See* Compl. at 8 (discussing the obligations of the "Navy in fulfilling . . . contracts with sailors"); *see also* Pls.' Resp. at 7 ("Each Plaintiff had a contract with the United States Government through the United States Navy.").  As defendant correctly notes, however, the employment of members of the military branches is governed by statute, not by contract.  *See* Def.'s Reply at 4 (citing *Schism v. United States*, 316 F.3d 1259, 1271-76 (Fed Cir. 2002) (*en banc*)).  Plaintiffs rely solely on the mention of the word "contract" in the Tucker Act, and cite no cases in support of their contract claim based on service in the Navy.  Inasmuch as plaintiffs' entitlement to pay is based solely upon statute, to the extent that plaintiffs rely upon a military enlistment contract or any other contract, such an alleged agreement cannot constitute a basis for Tucker Act jurisdiction.  *E.g.*, *Sonnenfeld v. United States*, 62 Fed. Cl. 336, 339 (2004).  Plaintiffs' contract claim, and Count IV of the complaint, must therefore be dismissed for lack of jurisdiction.

### 4.      ERISA Claim

Plaintiffs introduce a claim for the violation of their rights under the

---

[7]  The court notes that the counts of the complaint are roughly drawn and that it is not easy to categorize the type of claim (or claims) associated with each count.  For example, Count VI, rather than presenting a legal theory or claim, appears to consist entirely of factual allegations as to the types of harm plaintiffs will suffer as a result of their discharges.  Defendant suggests that plaintiffs' claims may be categorized into three basic types:  wrongful discharge, due process violations, and discriminatory treatment.  Def.'s Mot. at 12-13.

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002 *et seq.* (2006) (ERISA) in their response brief.  As defendant correctly notes, "[p]laintiffs' complaint never mentions any claims arising under [ERISA]."  Def.'s Reply at 3 n.2.  If defendant has been prejudiced by this last-minute addition of a claim that was not enumerated in the third amended complaint, the court could reasonably refuse to consider plaintiffs' ERISA claim.  *See, e.g.*, *Crest A Apartments Ltd. II v. United States*, 52 Fed. Cl. 607, 613 (2002) (refusing to "consider claims asserted by [the plaintiff] in its motion but not pleaded in its complaint") (citations omitted).

In any case, whether or not plaintiffs' response brief should be allowed to amend the complaint, which has already been thrice amended, plaintiffs have failed to cite any authority which holds that ERISA applies to plaintiffs' service in the Navy, or that claims under ERISA are within the jurisdiction of this court. Plaintiffs have thus failed to meet their burden to establish jurisdiction in this court for any ERISA claim.  Therefore, plaintiffs' ERISA claim, to the extent that it is properly before the court, is dismissed for lack of jurisdiction.  *See* Def.'s Reply at 3 n.2 (persuasively arguing that ERISA has no applicability to military retirements (citing 29 U.S.C. §§ 1002(32), 1003(b)(1))).

### 5. Independent Constitutional Claims

Defendant argues that plaintiffs, to the extent that they assert constitutional claims that are independent of their pay claims, assert claims that should be dismissed for lack of jurisdiction.  Def.'s Mot. at 11.  As a threshold matter, the court notes that plaintiffs' two references in the complaint to constitutional rights are fleeting and vague.[8]  The first mention of constitutional rights is in Count V of

---

[8]/ The complaint also cryptically alludes to "the 1983 Civil Rights Act" as a source of law that was violated by discrimination in the Navy's ERB process.  Compl. at 10.  There is no citation to the United States Code in support of this comment in the complaint, nor is there any factual allegation in the complaint which would support a claim based on civil rights protections of any sort.  The court notes that if plaintiffs intended to include an independent civil rights claim, perhaps under 42 U.S.C. § 1983 (2006), jurisdiction for such a claim lies in the district courts, not this court.  *See, e.g.*, *Marlin v. United States*, 63 Fed. Cl. 475, 476 (2005) (stating that this court "does not have jurisdiction to consider civil rights claims brought pursuant to 42 U.S.C. §§ 1981, 1983, or 1985 because jurisdiction over claims arising under the Civil Rights Act resides exclusively in the district courts") (citations omitted).  To the extent that the complaint could be read to present an independent civil rights claim, that claim is dismissed for

continue...

the complaint:  "[T]he failure to give an opportunity for a hearing or to be heard by each Plaintiff is a violation of the 5th Amendment of the United States Constitution."  Compl. at 8.  The next mention of constitutional rights, in Count VII of the complaint, suggests that discriminatory treatment of plaintiffs was "in violation of . . . the United States Constitution."  *Id.* at 10.  No further explanation of a claim, or claims, based on plaintiffs' constitutional rights can be found in the complaint.

To the extent that plaintiffs' complaint could be read to contain an independent claim based on the Due Process Clause of the Fifth Amendment to the United States Constitution, or an independent claim founded on the equal protection component of that clause, such claims are not within the jurisdiction of this court, because these constitutional provisions, by themselves, are not money-mandating. *E.g.*, *Hamlet v. United States*, 63 F.3d 1097, 1107 (Fed. Cir. 1995); *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995); *Mack v. United States*, 635 F.2d 828, 832 (Ct. Cl. 1980).  Plaintiffs have not cited to any authority which addresses this court's jurisdiction over independent claims based on constitutional provisions which are not money-mandating.  *See* Pls.' Resp. at 9 (asserting that "[c]ase law is replete with decisions wherein the United States Federal Court of Claims [sic] has ruled on constitutional issues," yet failing to cite a single decision by this court in support of this assertion); *see also* Def.'s Reply at 4 (persuasively arguing that plaintiffs failed to cite any authority that would support this court's jurisdiction over any independent Fifth Amendment claims).  Any independent constitutional claims that might be discerned in plaintiffs' complaint are dismissed for lack of jurisdiction.[9]

### 6.    Retirement Pay

---

[8]...continue
lack of jurisdiction.

[9]/  Whether a violation of due process or equal protection guarantees can be discerned in the Navy's conduct, as potential support for plaintiffs' wrongful discharge claim to pay and allowances, is a separate issue which will be discussed *infra*.  *See, e.g.*, *Holley*, 124 F.3d at 1467 (stating that the plaintiff in that case "was not barred from raising, and the Court of Federal Claims was not barred from considering, whether the procedures of his discharge were in violation of statutory, regulatory, or constitutional rights").

Defendant argues that plaintiffs' claim to "pension monies," Compl. at 11, fails both for lack of jurisdiction and as a matter of law.  *See* Def.'s Mot. at 23-24; Def.'s Reply at 5.  Defendant correctly notes that in their complaint plaintiffs have failed to cite to any statute that mandates the payment of retirement pay.  Def.'s Mot. at 23-24.  Plaintiffs' response brief also fails to reference a money-mandating statute that would support a claim for retirement benefits.  Plaintiffs have failed to meet their burden to establish any jurisdictional basis for their claim to retirement pay.[10]  Thus, plaintiffs claim to retirement pay must be dismissed for lack of jurisdiction.

## B.      Failure to State a Claim, on Justiciability Grounds

Defendant's RCFC 12(b)(6) arguments, other than the retirement pay claim challenge discussed *supra* note 10, focus on whether the Navy's ERB process is at all subject to judicial review:  "[P]laintiffs' amended complaint should be dismissed, for failure to state a claim upon which relief can be granted, because . . . the [discharge] decisions challenged by plaintiffs were left purely to the discretion of the Navy and are thus nonjusticiable."  Def.'s Mot. at 2.  The government relies on a series of precedential decisions of the Federal Circuit, and, in particular, on a decision issued by this court which is not binding in this case, for its justiciability test.  The court is not persuaded by these authorities, however, that plaintiffs' challenge to the Navy's ERB process is nonjusticiable in its entirety.

### 1.      Binding Precedent

It is clear that some routine personnel decisions by the military are nonjusticiable.  *See, e.g.*, *Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir. 1988) (citing cases).  "There is a significant difference[, however,] between relatively minor and routine military personnel actions, like the denial of [a special pay benefit], and the denial of all pay and allowances through allegedly unlawful

---

[10]/  Defendant persuasively argues that even if plaintiffs had cited a retirement pay statute applicable to retirees from the Navy, plaintiffs' retirement pay claim would fail as a matter of law.  *See* Def.'s Mot. at 23-24.  None of the facts alleged in the complaint would support a viable claim for retirement benefits, because no plaintiff would have attained eligibility for mandatory retirement pay by the end of his or her term of service.  *See id.*  Defendant's arguments are entirely unrebutted by plaintiffs.  Thus, even if the court possessed jurisdiction over plaintiffs' retirement pay claim, this claim would necessarily be dismissed under RCFC 12(b)(6).

discharge from military service because of statutory violations by the military departments." *Id.* at 780 n.1 (citing *Sanders v. United States*, 594 F.2d 804, 814 (Ct. Cl. 1979); *Yee v. United States*, 512 F.2d 1383, 1388 (Ct. Cl. 1975); *Clackum v. United States*, 296 F.2d 226, 229 (Ct. Cl. 1961)). When a procedural or statutory violation has been alleged to have rendered a discharge wrongful, this type of challenge to a discharge is generally viewed as justiciable. *See, e.g.*, *Holley*, 124 F.3d at 1468 (noting that in such cases the court may inquire "whether the decision to [discharge] without a full hearing before a board of inquiry violated any statute, regulation, or the fundamental due process that the Constitution provides to all persons").

Defendant, in its examination of the issue of justiciability, relies on *Murphy v. United States*, 993 F.2d 871, 872-73 (Fed. Cir. 1993), and *Sargisson v. United States*, 913 F.2d 918, 922 (Fed. Cir. 1990), for their holdings that certain military separation procedures were discretionary and not subject to judicial review. Def.'s Mot. at 13-14. These decisions are not only distinguishable from this case on their facts, but the Federal Circuit clearly noted in those cases that procedural challenges to allegedly wrongful discharges are generally justiciable. *See Murphy*, 993 F.2d at 873 (stating that "[o]n procedural matters, [because] the test or standard is inherent[,] [a] court may appropriately decide whether the military followed procedures because by their nature the procedures limit the military's discretion"); *Sargisson*, 913 F.2d at 922 (holding that a claim founded on an alleged statutory violation was justiciable). Defendant has also cited *Adkins v. United States*, 68 F.3d 1317, 1323 (Fed. Cir. 1995), which draws the distinction between a justiciable wrongful discharge claim, based on alleged violations of statute, regulation, or procedure, and a nonjusticiable challenge to the merits of a personnel decision committed to the discretion of the military branch. *See id.* at 1323 & n.8 (citing cases). None of the binding precedent cited by defendant instructs this court to reject all of plaintiffs' challenges to their discharges as nonjusticiable.

## 2.     Confusion Between a Justiciability Standard and a Standard of Review for a Wrongful Discharge Claim

Defendant relies extensively on a decision of this court for the formulation of the government's justiciability test. *See* Def.'s Mot. at 13-15, 18, 22 (citing *Brigante v. United States*, 35 Fed. Cl. 526 (1996)); *see also* Def.'s Reply at 7 (same). The court notes, first, that no other decision from this court, or any other

court, has adopted the "justiciability test" that defendant has discerned in *Brigante*. The passage in question concludes an opinion section titled "Justiciability":

> Thus, in military discharge cases, judicial review is only appropriate if the court finds the military agency acted beyond the applicable statutory authority, ignored procedural regulations, or violated minimum concepts of basic fairness.

*Brigante*, 35 Fed. Cl. at 530 (citations omitted).

The court observes that if the word "review" is replaced by the word "intervention," the above-cited passage in *Brigante* accurately states the standard of review for wrongful discharge claims. *See, e.g.*, *Waller v. United States*, 461 F.2d 1273, 1276 (Ct. Cl. 1972) ("[A]n administrative discharge issued to a serviceman prior to the expiration of his enlistment term is void if it exceeds applicable statutory authority, or ignores pertinent procedural regulations, or violates minimum concepts of basic fairness.") (citations omitted).  Defendant's reliance on *Brigante* for the formulation of a three-element test for *justiciability* is misplaced.  The remaining sections of the *Brigante* opinion clearly apply the *Waller* standard of review to the merits of the case and deny relief to the plaintiff not on justiciability grounds but because the plaintiff's discharge was not improper.  *See* 35 Fed. Cl. at 532 (granting the government's motion to dismiss because the "Navy's actions were within the powers delegated to it by statutes and Naval regulations, and met the minimum level of fairness").  Thus, in substance, *Brigante* presents a standard for judicial review of a challenge to a military discharge, not a justiciability standard.

### 3.    Plaintiffs' Challenges to the Merits of Their Discharges are Nonjusticiable

Although defendant has perhaps faltered somewhat in stating the standard for justiciability, the court notes that the law is not perfectly settled in this area.  Each type of military personnel decision may pose a slightly different justiciability problem.  Denials of disability retirement benefits, for example, are justiciable, and this court may reach the merits of a decision denying disability retirement benefits to a service-member, although such review is deferential.  *E.g.*, *Fisher v. United States*, 402 F.3d 1167, 1180, 1184 (Fed. Cir. 2005).  Courts must determine,

sometimes with great difficulty, whether precedent permits judicial review of the merits of a particular type of military personnel decision.  *See id.* at 1177-84.

There is not much difficulty, however, in analyzing the precedent that governs this case.  A challenge to the merits of a discharge alleged to be wrongful is a nonjusticiable controversy under binding precedent in this circuit.  *See, e.g.*, *Sargisson*, 913 F.2d at 922 (holding that because there were no tests or standards that a court could apply to the merits of a reduction in force by the Air Force, the plaintiff's suit was nonjusticiable and the court could not decide "whether the decision to release [the plaintiff] from active duty was correct").  This court cannot intrude upon the Navy's power to manage its active-duty workforce.  *See, e.g.*, *Murphy*, 993 F.2d at 874 (holding, in the case of a reduction in force by the Air Force, that "the merits of the Air Force's decision to release [the plaintiff] from active duty are beyond judicial reach").

Plaintiffs' only citation to binding precedent on the justiciability issue is to *Sanders*, 594 F.2d at 812.  Pls.' Resp. at 12-13.  *Sanders*, however, is inapposite because that decision discusses this court's review of the decisions of military boards for the correction of records, a circumstance which does not pertain here. *See* Def.'s Reply at 6-7.  The court agrees with defendant that *Murphy* and *Sargisson* clearly bar this court's consideration of the merits of the Navy's decision to convene an ERB and the merits of the Navy's decision to discharge plaintiffs; plaintiffs' challenges to these discretionary decisions are nonjusticiable.  Plaintiffs' claims attacking the merits of the Navy's decision to discharge them must be dismissed under RCFC 12(b)(6) because those claims are nonjusticiable.  *See, e.g.*, *Birt v. United States*, 180 Ct. Cl. 910, 913 (1967) ("[W]e may test the validity of a discharge only in terms of its legal sufficiency and not in terms of the military's wisdom in discharging one of its members.").

**4.      Plaintiffs' Exhibits Which Go To the Merits of the Navy's Discharge Decisions Will Not Supplement the Administrative Record**

All of plaintiffs' supplemental exhibits are offered to show that the Navy should not have decided to discharge plaintiffs.  *See* Pls.' Supp. Mot. at 9 (stating that plaintiffs' supplemental exhibits are "germane to the *basis* of the ERB

[decisions] discharging plaintiffs") (emphasis added);[11] Pls.' Supp. Reply at 9-10 ("The Supplemental material points out that not only did the Navy's [over-manning] projections not 'substantially' support their action of discharge, but it didn't even come close."). Supplemental Exhibit A, an article in the "Navy Times," discusses current recruitment and re-enlistment goals;[12] Supplemental Exhibit B, another "Navy Times" article, similarly discusses recruitment plans of the Navy; Supplemental Exhibit C, another "Navy Times" article, discusses two decades of Navy workforce reductions and efforts to restore the workforce to a higher level; Supplemental Exhibit D lists "rating quotas," Pls.' Supp. Mot. at 4, for new recruits for the Navy. These exhibits, in plaintiffs' view, undermine the "premises upon which [the] ERB based its [discharge] decision." *Id.* at 5.

As the court has noted, however, the merits of the discharge decisions of the Navy are nonjusticiable. Plaintiffs' supplemental exhibits, which could only inform a judicial review of the merits of the discharge decisions, are not necessary for an effective judicial review of plaintiffs' justiciable claims alleging violation of statutory, procedural or constitutional rights, which are fully explicated by the administrative record submitted by defendant. Under *Axiom*, plaintiffs' motion to supplement the record with their supplemental exhibits must therefore be denied.

The court now turns to the exhibits attached to plaintiffs' response to defendant's dispositive motion. Defendant challenges Plaintiffs' Exhibits B, E, G, H, and K as improper supplements to the administrative record. Def.'s Reply at 9-11. The court notes, first, that Exhibit E appears to be an incomplete copy of Supplemental Exhibit C, and must be rejected for the same reason that Supplemental Exhibit C has been rejected. Exhibit K is an email discussing possible links between two ERB discharges and two suicides. This email has no possible relevance to the justiciable challenge to the ERB process that this court must resolve. Thus, the court agrees with defendant that neither Plaintiffs' Exhibit E nor Plaintiffs' Exhibit K should supplement the administrative record in this case.

The remaining exhibits challenged by defendant comment on the procedures

---

[11]/ Plaintiffs' motion is unpaginated; the court uses the page numbers supplied by the court's electronic filing system.

[12]/ Supplemental Exhibit A contains a second article from the "Navy Times"; its inclusion in this exhibit is unexplained. *See* Pls.' Supp. Ex. A at 5-7.

followed by the Navy in the ERB process. Plaintiffs' Exhibit B is a letter from an official at the Navy to a Congressman giving a detailed explanation of the ERB process; Plaintiffs' Exhibits G and H are affidavits from discharged sailors. Although these documents may not ultimately prove to be probative in this case, the court notes that supplementation of the administrative record has not been uniformly rejected by this court in military pay cases. *See, e.g.*, *Fuentes v. United States*, No. 10-861C, 2012 WL 1650748, at *1-*3 (Fed. Cl. May 11, 2012) (permitting two brief extra-record documents to supplement the record in that military pay case); *Golding v. United States*, 48 Fed. Cl. 697, 728-29 (2001) (permitting limited supplementation of the administrative record to examine an allegation of bad faith conduct by the military). Although the court will rely primarily on the administrative record produced by the Navy, the court does not believe judicial review of the procedural, statutory and constitutional challenges brought by plaintiffs would be effective if the court completely ignored plaintiffs' proffered evidence as to the procedures followed by the ERB. Thus, under A*xiom*, Plaintiffs' Exhibits B, G and H are appropriate supplements to the administrative record in this case.

###   C.    Judgment on the Administrative Record

The court reviews the ERB process to determine whether "it exceed[ed] applicable statutory authority, or ignore[d] pertinent procedural regulations, or violate[d] minimum concepts of basic fairness." *Waller*, 461 F.2d at 1276 (citing *Keef v. United States*, 185 Ct. Cl. 454, 461 (1968); *Birt*, 180 Ct. Cl. at 913); *see also Brigante*, 35 Fed. Cl. at 530 (same). As part of the inquiry into alleged violations of "minimum concepts of basic fairness," the court must determine whether plaintiffs' constitutional rights have been violated. *E.g.*, *Holley*, 124 F.3d at 1468; *Keef*, 185 Ct. Cl. at 471. Because plaintiffs' challenges to the ERB process are not always clearly set forth or logically organized, the court will address all of plaintiffs' substantive arguments by grouping them into the categories described in *Waller*.[13]

---

[13]/ Plaintiffs' unsupported speculation as to bad faith motives of the Navy are insufficient to overcome the presumption of good faith accorded to the actions of military officers and will not be further discussed in this opinion. *See Hoffman v. United States*, 894 F.2d 380, 385 (Fed. Cir. 1990) ("Military officers, like other public officials, are presumed to 'discharge their duties correctly, lawfully, and in good faith.'" (quoting *Guy v. United States*, 608 F.2d 867, 870 (Ct. Cl. 1979))).

continue...

### 1.    Statutory Authority Not Exceeded

In the complaint, plaintiffs cite 10 U.S.C. § 1169 (2006) as the statute that was contravened in the ERB process.  *See* Compl. at 6 ("Defendant is prohibited by Title 10 U.S.C.A §1169 from discharging a sailor before their 'term of service' has ended.").  Neither the complaint nor plaintiffs' response brief sets forth the relevant provisions of § 1169, the text of which reads:

> No regular enlisted member of an armed force may be
> discharged before his term of service expires, except–
> (1) as prescribed by the Secretary concerned;
> (2) by sentence of a general or special court martial; or
> (3) as otherwise provided by law.

10 U.S.C. § 1169.  Plaintiffs' theory appears to be that the Secretary could not delegate discharge decisions to the ERB.  *See* Compl. at 7 ("By Title 10 U.S.C. §1169 only the Secretary of the Navy can prescribe a discharge before a term of service expires . . . ."); *id.* at 8 ("The ERB acting as a sub agency in terminating Plaintiffs at will is illegal and not within the meaning of the word 'prescribed' as set forth in Title 10 U.S.C. §1169."); Pls.' Resp. at 25 ("[C]an the Secretary of the Navy outsource to a separate[ly] created body, 'the ERB' to correct its [workforce staffing level] problems?").  Plaintiffs fail to cite any caselaw to support their view that only the Secretary can "prescribe" the discharge of sailors prior to the expiration of their terms of service.

As defendant persuasively argues, nothing in the creation of the ERB or the discharges that ensued exceeded the authority of § 1169 or any other statute.  *See* Def.'s Mot. at 14-18; Def.'s Reply at 15-16.  In particular, the government notes that the convening of the ERB and, subsequently, plaintiffs' discharges, were approved by the Chief of Naval Personnel who has been delegated the requisite authority by 10 U.S.C. §§ 5131, 5132(b), 5141 (2006).  Def.'s Mot. at 17 & n.12.  Defendant further notes that discharges of the type at issue in this suit are authorized by 10 U.S.C. § 5013(b), (c)(4) (2006).  Def.'s Mot. at 14-15.  Plaintiffs offer no authority to rebut these arguments.  This court has approved other schemes

---

[13]...continue

for the reduction of enlisted personnel in the military as being within the authority of § 1169.  *See, e.g., Brigante*, 35 Fed. Cl. at 530 (citing *Vierrether v. United States*, 27 Fed. Cl. 357, 361 (1992), *aff'd*, 6 F.3d 786 (Fed. Cir. 1993) (table); *Giglio v. United States*, 17 Cl. Ct. 160, 166 (1989)).  In sum, plaintiff has not established that the Navy exceeded the authority of 10 U.S.C. § 1169 in this case.

## 2.    Required Procedures Not Ignored

Plaintiffs raise three principal challenges to the ERB process that are founded on procedural requirements for enlisted personnel separations set forth in Department of Defense Instruction 1332.14 (Aug. 28, 2008) (DoDI 1332.14).[14] This court has held that DoDI 1332.14 is binding on the service branches.  *E.g., Strickland v. United States*, 69 Fed. Cl. 684, 702-09 (2006); *Gilchrist v. United States*, 33 Fed. Cl. 791, 799 (1995); *see also Favreau v. United States*, 317 F.3d 1346, 1350 (Fed. Cir. 2002) (stating that DoDI 1332.14 "sets out guidelines for the separation of service-members").  First, plaintiffs suggest that they did not receive adequate notice of the reasons for their discharges, as required by DoDI 1332.14. *See* Compl. at 6 ("Each Plaintiff is without information and knowledge of the basis for his selection in the discharge procedure that took place by the ERB.").  Second, plaintiffs argue that the right to a hearing provided by DoDI 1332.14 was denied to them.  *See id.* ("No Plaintiff herein has been offered an Administrative Hearing or a Hearing of any type nature to be confronted with the basis of his discharge."). Third, plaintiffs appear to argue that the particular type of reduction in force accomplished by the ERB process is not among the types of workforce reductions permitted by DoDI 1332.14.  *Id.* at 7.  The court will address each of plaintiffs' arguments based on DoDI 1332.14 in turn, and will then address a separate issue raised not in the complaint but in plaintiffs' response brief – whether procedures set forth in the Navy's personnel manual were violated by the ERB process.

### a.    Adequate Notice

---

[14]/ DoDI 1332.14 was attached both to the complaint and to plaintiffs' response brief. Compl. Ex. D; Pls.' Ex. A.  Plaintiffs' reliance on the provisions of DoDI 1332.14 is not aided by plaintiffs' failure to provide pin-cites to exhibit pages or full citation to particular paragraphs within the fifty-three page directive.  *See supra* note 1.  This directive is also available at http://www.dtic.mil/dtic (last visited May 17, 2013).  For the sake of clarity in this opinion, the court has exchanged parentheses for periods in the subparagraph identifiers in this directive, transforming, for example, DoDI 1332.14 Enc. 3 ¶ 2a.(1), to DoDI 1332.14 Enc. 3 ¶ 2(a)(1).

On the topic of their right to receive notice of the bases of their discharges,[15] plaintiffs' sole citation to a specific provision of DoDI 1332.14 is perplexing.  The provision cited by plaintiffs refers to the Secretary's responsibility to *periodically* inform enlisted personnel of separation *policies*.  *See* Compl. at 6 (quoting DoDI 1332.14 Enc. 2 ¶ 2(c)(4)).  This provision, of a broad and general purpose, cannot be construed to apply to plaintiffs' right, if any, to receive notice of the bases of their *particular* discharges.  The relevant text of DoDI 1332.14 Enc. 2 ¶ 2(c)(4) is reproduced here:

> [The Secretary shall] [p]rescribe appropriate internal procedures for periodically informing enlisted personnel about separation policy, the types of separations, the basis for their issuance, the possible effects of various actions upon reenlistment, civilian employment, veterans' benefits, and related matters concerning denial of certain benefits to Service members who fail to complete at least 2 years of an original enlistment.  Failure on the part of the Service member to receive or to understand such explanation shall not create a bar to separation or characterization.

*Id.*  Even if this provision could be construed to have some relevance to plaintiffs' argument that they did not receive adequate notice of the bases of their discharges, this provision clearly states that the failure of the Secretary to provide the information outlined in this provision is *not* a bar to separation.  Thus, in the complaint plaintiffs have not pointed to any provision of DoDI 1332.14 which requires that a particular type of notice be provided plaintiffs in the circumstances of their discharges, nor have they shown how any such provision could have been violated.

In their response brief, plaintiffs make little headway with their notice rights argument based on DoDI 1332.14.  On page four of their brief, plaintiffs cryptically refer to notice rights provided in DoDI 1332.14, but fail to state where the relevant provisions are located in that directive.  Plaintiffs may be referencing DoDI 1332.14

---

[15]/  Plaintiffs' contention that they should have had notice of their hearing rights is briefly addressed in the next section of this opinion.

Enc. 5 ¶ 2(a), which addresses notice rights of service-members that will be separated under certain types of separation procedures.  On page fifteen of their brief, plaintiffs again mention their notice rights, but again fail to cite any specific section of DoDI 1332.14.  Finally, plaintiffs allege that they "were never told why they were discharged," Pls.' Resp. at 21, but fail to explain how the Navy has violated any specific notice requirements that might be found in DoDI 1332.14.  On this record, plaintiffs have not established a violation of notice requirements in DoDI 1332.14.

Even though plaintiffs have neglected to identify any specific notice rights in DoDI 1332.14 that apply to their discharges, the court will nonetheless review the record for any possible violation of specific notice rights provided by that directive.  The court notes that the ERB was convened under DoDI 1332.14 Enc. 3 ¶ 2, which authorizes certain types of workforce reductions.  *See* AR at 1 (identifying the specific provision in DoDI 1332.14 authorizing the ERB process); *see also* DoDI 1332.14 Enc. 3 ¶ 2 (titled "Selected Changes in Service Obligations").  The court begins with the administrative record evidence of general announcements regarding the ERB process.

The ERB process, which would reduce the workforce in certain job specialties in certain enlisted pay grades within the Navy, was announced to all naval personnel on April 14, 2011.  AR Tabs 23, 47.  It was clear that retention decisions would be based, at least in part, on a review of the performance of enlisted personnel in certain job specialties and pay grades.  *Id.* at 522.  A notice regarding an alternative to separation (conversion to a job specialty that was not targeted for workforce reductions) was issued on May 9, 2011.  *Id.* Tabs 24, 49.  A notice extending the deadline for requesting a conversion to another job specialty (so as to avoid separation) was issued on June 9, 2011.  *Id.* Tab 53.  Over two thousand requests for conversion were received in response to these notices.  *Id.* Tab 59.  As defendant concludes, plaintiffs were given notice of their potential discharges and the basis for those potential discharges.  The court is not aware of, and plaintiffs have failed to articulate, any specific notice rights provided by DoDI 1332.14 that were violated in the notice given to plaintiffs that they might be discharged at the conclusion of the ERB process.

Finally, and most importantly, the combination of general announcements regarding the ERB process given to all affected naval personnel, and the

individualized notice given to each plaintiff that they were not selected for retention by the ERB, cannot be construed as violating any notice requirements provided by DoDI 1332.14. Defendant asserts, and plaintiffs have not refuted, the fact that DoDI 1332.14 contains *no specific notice requirements* for a discharge process initiated under the authority of DoDI 1332.14 Enc. 3 ¶ 2, as was the case here. Def.'s Mot. at 20 & nn. 14-15, 30. Further, if the court is correct that plaintiffs intended to rely on the notice provisions stated in DoDI 1332.14 Enc. 5 ¶ 2(a), an introductory provision in Enclosure 5 restricts the "supplementary procedures" in Enclosure 5 to specific types of discharges not applicable to the plaintiffs in this case. *See* DoDI 1332.14 Enc. 5 ¶ 1(a); *see also* Def.'s Mot. at 20 & n.14. Thus, plaintiffs' claim that their notice rights under DoDI 1332.14 were violated fail for the simple reason that this directive has not been shown to prescribe specific notice procedures in the circumstances that apply here.

## b.  Right to a Hearing

Plaintiffs' argument that their right to a hearing (and their related right to receive notice of their hearing rights) under DoDI 1332.14 were violated by the Navy fails for exactly the same reason – no such hearing procedures are prescribed by DoDI 1332.14 for discharge programs initiated under DoDI 1332.14 Enc. 3 ¶ 2. Plaintiffs reference, albeit without functional citation, a variety of hearing rights noted in DoDI 1332.14, and assert that each plaintiff was entitled, under this directive, to receive written notice of the service-member's right to a hearing, as well as an "Administrative Board" concerning the upcoming discharge. Pls.' Resp. at 4, 22. Defendant notes that plaintiffs appear to be relying on provisions in DoDI 1332.14 Enclosure 5, perhaps DoDI 1332.14 Enc. 5 ¶ 2(a)(7). Def.'s Mot. at 20. As stated *supra*, however, the prescribed procedures in Enclosure 5 do not apply to general workforce reduction programs initiated under DoDI 1332.14 Enc. 3 ¶ 2. *See* Def.'s Mot. at 20 & nn. 14-15, 30. Plaintiffs therefore have not shown that any rights to a hearing provided by DoDI 1332.14 were violated by the Navy in the ERB process.

## c.  Permissible Purpose of Reduction

Plaintiffs argue that the ERB process is impermissible under DoDI 1332.14, and rely on DoDI 1332.14 Enc. 3 ¶ 2(a)(1) for their interpretation of that directive. There are many permutations of plaintiffs' argument, none of which is expressed

clearly.  It may be that plaintiffs assert that the ERB was impermissible from the beginning, or that the ERB strayed from a permissible purpose into an impermissible one.  The presentation of this particular argument in the complaint is hard to decipher and is reproduced here in its entirety:

> The Navy does not have an instruction for Administrative Separation and therefore as authority to separate cite [Complaint] Exhibit D (DoD Instruction 1332.14P, enclosure 3 subparagraph 2A(1)) as the basis of that separation authority which says a service member may be separated for the following reasons: "General demobilization or reduction in authorized strength."
>
> However, the Secretary of the Navy created the ERB only to rebalance individual career fields within their Congressionally authorized end strength.
>
> The ERB was not created for or ever designed for separation purposes of existent tours of duty to achieve congressionally authorized force levels or grade distributions as Exhibit D paragraph 4A(3) states. Especially is the ERB without authority when the manning levels are below congressional mandated levels and strength.  The ERB cannot be used as an alter ego for purposes of terminating personnel such as the Plaintiffs prior to their term of service expiring for any purpose of discharging personnel outside the parameters for which it was originally created.

*Id.* at 7.

In plaintiffs' response brief, several variations of this argument are presented. Without mentioning DoDI 1332.14, plaintiffs assert that "the ERB stepped out of the boundaries of its creation" by terminating enlisted personnel during the course of their terms of duty.  Pls.' Resp. at 5.  Vaguely referring to "breached military regulations," plaintiffs appear to argue that the ERB could only discharge enlisted

personnel if workforce reductions were required because of "congressional mandated levels and strengths." *Id.* at 15.  Plaintiffs, again without reference to DoDI 1332.14 or specific provisions therein, also contend that "[t]he Navy without authority had turned the ERB or retention board into a reduction in force RIF board." *Id.* at 20.  Having reviewed the complaint and plaintiffs' response brief, the court must determine whether any of plaintiffs' various contentions identify a violation of the provisions of DoDI 1332.14.  The answer is, quite simply, no.

The Secretary is permitted to institute early separation programs under DoDI 1332.14 Enc. 3 ¶ 2(a)(2).  In relevant part, the directive states that "[a] Service member may be separated for the following reasons . . . . (2) Early separation of personnel under a program established by the Secretary concerned." *Id.* Enc. 3 ¶ 2(a).  None of plaintiffs' arguments show that the Navy exceeded this authority.

### d.    Personnel Manual Procedures

Although the complaint makes no reference to rights provided in the Navy Military Personnel Manual (MILPERSMAN), plaintiffs argue in their response brief that two notice provisions of that manual were violated in the ERB process. Pls.' Resp. at 22 (citing "MILPERSMAN 1910-010" and "MILPERSMAN 1910-402").[16]  However, as defendant notes, Def.'s Reply at 18-19, MILPERSMAN 1910-010 specifically explains that the notice procedures upon which plaintiffs apparently rely do not provide substantive rights to service-members, *see* MILPERSMAN 1910-010 ¶ 5(c).  Defendant further notes that the notification procedures described in MILPERSMAN 1910-402 do not apply to a workforce reduction discharge program, as is the case here.  *See* Def.'s Reply at 19.  Plaintiffs have thus failed to show that any procedural rights which might have been conferred upon them by MILPERSMAN were violated by the Navy in the ERB process.

### 3.    Minimum Concepts of Basic Fairness Met

Plaintiffs have made reference in the complaint and their response brief to the

---

[16]/ The personnel manual documents referenced by plaintiffs are attached to their response brief as Exhibits I and J.  Plaintiffs fail to cite any authority that supports their implicit assumption that these MILPERSMAN provisions apply to the type of discharges at issue in this case.

terms "due process" and "discrimination," Compl. at 10; Pls.' Resp. at 8, 26, but have utterly failed to articulate a standard by which the court could measure whether "minimum concepts of basic fairness" characterized the discharge procedures challenged in this suit, *Waller*, 461 F.2d at 1276.  With some difficulty, the court has identified the constitutional rights that are obscurely woven into the fabric of plaintiffs' claims:  due process protections provided by the Due Process Clause of the Fifth Amendment to the United States Constitution, and, perhaps, protection from discrimination provided by the equal protection component of that clause.  The court turns first to the right to due process.

### a.   Due Process

This court does not write on a clean slate as far as military discharges are concerned – it is bound by the decisions of the Court of Claims and of the Federal Circuit.  The court notes, first, that stigma, such as that occasioned by a dishonorable discharge, triggers a right to due process considerations that an honorable discharge does not.  *See, e.g.*, *Keef*, 185 Ct. Cl. at 467-68 (stating that "we will not permit the imposition of a stigma 'without respect for even the most elementary notions of due process of law'" (quoting *Clackum*, 296 F. 2d at 228)).  As defendant persuasively argues, however, the ERB process and the honorable discharges resulting therefrom did not stigmatize plaintiffs.  *See* Def.'s Mot. at 28-29.

Plaintiffs' protestation that their honorable discharges were stigmatizing is unsupported by legal authority or by documentary evidence in the administrative record.  *See* Pls.' Resp. at 13, 15, 26 (asserting that because superior performance was one of the factors used to retain service-members, non-retention was stigmatizing).  The court is bound by *Keef* which clearly states that "[t]he argument that a discharge prior to the expiration of a current term of enlistment necessarily is a stigma can be summarily rejected."  185 Ct. Cl. at 468.  In that case, the discharged service-member was barred from reenlistment by a code on his discharge form, yet no stigma attached to his honorable discharge.  *Id.* at 469; *see Vierrether*, 27 Fed. Cl. at 364-65 (same).  The inquiry into stigma typically focuses on notations on the discharge form.  *E.g.*, *Flowers v. United States*, 80 Fed. Cl. 201, 224 (2008) (citations omitted).  Plaintiffs have not alleged that their discharge forms contain stigmatizing notations; plaintiffs, under *Keef*, have not shown that stigma attached to their honorable discharges.

Because no stigma attached to the discharges of these plaintiffs, due process rights to notice and a hearing do not apply.  *See Keef*, 185 Ct. Cl. at 468 (holding, in that case, "that an honorable discharge for the convenience of the government . . . , prior to the expiration of an enlistment, without more, is within legally proper bounds when effected without notice or a hearing"); *see also Canonica v. United States*, 41 Fed. Cl. 516, 524 (1998) (stating that the Fifth Amendment "prevents the military from discharging a service member without due process – but only in cases where a 'stigma' would attach to the discharge" (citing *Holley*, 124 F.3d at 1469-70; *Vierrether*, 27 Fed. Cl. at 364-65)).  Instead, plaintiffs were entitled to a process which satisfied "minimum concepts of basic fairness."  *Waller*, 461 F.2d at 1276.  The ERB process met this standard.  In additional to the notice provided plaintiffs, described *supra*, the Navy encouraged affected service-members to verify the accuracy of the personnel records that would be reviewed by the ERB, and to submit missing information for the ERB to consider.  AR at 526-27.  Furthermore, each plaintiff received an in-person notification of their non-selection for retention.  Def.'s Mot. at 29 (citing AR at 569-71, 600, 604); Pls.' Ex. F; Pls.' Ex. G at 1.  The court concludes that plaintiffs were afforded a process that did not violate minimum concepts of basic fairness.

### b.    Equal Protection

If plaintiffs indeed intend to advance a claim based on some violation of the equal protection guarantees enshrined in the Fifth Amendment, the basis for their claim remains obscure.  The court reproduces a passage from the complaint that appears to summarize the nature of plaintiffs' equal protection claim:

> That the selection process in itself was discriminatory in that it targeted and directed the terminations against E4[]s, E5s, E6s and E7s but further targeted only those in 31 specific career fields and those sailors and Plaintiffs who were about to reach the 15 year of service or the qualification of 15 years pension benefits.
>
> The defendant also discriminated against the Plaintiffs by mandating termination not only those within the 31 career fields but further targeting only Plaintiffs in certain year groups and "length of service cells," . . . .  The Plaintiffs

> were further discriminated against as the defendant
> instituted promotions of lower ranked sailors into the
> rankings the Defendant had terminated the Plaintiffs from.

Compl. at 10.  In plaintiffs' response brief, discrimination by the Navy in the ERB
process is again alleged:

> This points to discrimination by the Navy carving out a
> selected group of personnel on the doorstep of their 15
> year pension acquisition and with the intent of acquiring
> twenty (20) years.
>
> The discrimination is no less heinous or disastrous to the
> [a]ffected if it was discrimination because of budget
> reasons rather than race, creed or color.

Pls.' Resp. at 7.  Plaintiffs provide no standard by which the court should determine
whether plaintiffs' right to equal protection under the Fifth Amendment was
violated in this instance.

Defendant argues that plaintiffs have failed to establish that they are members
of a protected class, so as to bring a valid "prima facie case of discrimination
against the Government."  *See* Def.'s Mot. at 21 n.16 (citing *Youssef v. F.B.I.*, 687
F.3d 397, 401 (D.C. Cir. 2012)).  The court frames the issue somewhat differently.
The court must first determine whether plaintiffs' equal protection claim is founded
upon a suspect classification.  *See, e.g.*, *Harris v. McRae*, 448 U.S. 297, 322 (1980)
(distinguishing between Fifth Amendment equal protection claims based on suspect
classifications such as race, and those which do not rely on race or other suspect
classifications) (citing *Brown v. Board of Education*, 347 U.S. 483 (1954)); *Britell
v. United States*, 372 F.3d 1370, 1380 (Fed. Cir. 2004) (citing *McRae* for the
distinction between claims alleging government action involving a suspect
classification, and other types of government action).  The court must next
determine whether plaintiffs possessed a fundamental constitutional right to
continued employment with the Navy.  *See, e.g.*, *Briggs v. Merit Sys. Prot. Bd.*, 331
F.3d 1307, 1317 (Fed. Cir. 2003) ("Heightened scrutiny is applicable only when a
law's classification is drawn along suspect or quasi-suspect lines, such as race, or
when the law impinges upon a fundamental right.") (citations omitted).

Suspect classifications include race, gender and national origin. *See, e.g.*, *Berkley v. United States*, 287 F.3d 1076, 1084 (Fed. Cir. 2002) ("It is . . . well established that '[t]o state a claim for an equal protection violation, [plaintiffs] must allege that a government actor intentionally discriminated against them on the basis of race, national origin or gender.'" (quoting *Hayden v. Nassau*, 180 F.3d 42, 48 (2d Cir. 1999))). Here, there has been no allegation that the ERB used race, national origin or gender, or any other suspect or quasi-suspect class, to select plaintiffs for non-retention. Indeed, the ERB members were instructed to *not* interpret the equal opportunity guidance provided to them "as requiring or permitting preferential treatment of any eligible or group of eligibles on the grounds of race, religion, color, gender or national origin." AR at 30, 274. Thus, the court concludes that plaintiffs have not brought an equal protection claim that is founded on a suspect classification, and, even if they had, the record shows no evidence of discrimination based on a suspect classification.

Turning to whether plaintiffs possessed a fundamental constitutional right to continued employment with the Navy, it is clear that no fundamental right in continued federal employment exists. *See, e.g.*, *Puglisi v. United States*, 564 F.2d 403, 409 (Ct. Cl. 1977) (stating that "the right to governmental employment is not per se 'fundamental' in the constitutional sense") (citations omitted); *Brame v. United States*, 10 Cl. Ct. 252, 256 (1986) ("Federal employees do not have a constitutionally protected property interest in continued federal employment." (citing *Arnett v. Kennedy*, 416 U.S. 134 (1974)). This principle applies as well to service-members in the military branches. *See, e.g.*, *Paskert v. United States*, 20 Cl. Ct. 65, 77 (1990) ("Service members have no constitutional rights to remain on active duty, and their rights are defined by the applicable statutes and regulations." (citing *Alberico v. United States*, 7 Cl. Ct. 165, 168-69 (1984), *aff'd*, 783 F.2d 1024 (Fed. Cir. 1986)). Thus, the court concludes that plaintiffs' equal protection claim rests neither on a suspect classification nor on a fundamental right which would trigger heightened scrutiny of the ERB process.

Plaintiffs' equal protection claim thus requires only rational basis review of the ERB process. *E.g.*, *Briggs*, 331 F.3d at 1317. The Federal Circuit has succinctly described how a rational basis review is conducted:

> On a rational basis review, a classification bears a strong
> presumption of validity, and the burden of persuasion is

> on a challenger to show the absence of a rational basis.
> [*F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313
> (1993)].  A rational basis is "any reasonably conceivable
> state of facts" that support the classification.  *Id.*  Such
> facts may be based on "rational speculation unsupported
> by evidence or empirical data."  *Id.*

*Id.* at 1318.  Furthermore, the court accords special deference to the military's personnel decisions.  *See, e.g.*, *Woodward v. United States*, 871 F.2d 1068, 1077 (Fed. Cir. 1989) ("Special deference must be given by a court to the military when adjudicating matters involving their decisions on discipline, morale, composition and the like, and a court should not substitute its views for the 'considered professional judgment' of the military.") (citations omitted).  This court has commented that rational basis review of military personnel decisions is both lenient and deferential.  *See Boyer v. United States*, 81 Fed. Cl. 188, 204-05 (2008) (citing cases).  The ERB process here survives rational basis review.[17]

As defendant persuasively argues, it was within the Navy's discretion to reduce force levels and to convert some but not all affected service-members to other job specialties.  Def.'s Mot. at 13-15, 21-22; Def.'s Reply at 14.  Furthermore, the record shows that the ERB process was rational in its inception and in its

---

[17]/ The court acknowledges that there is potential tension between precedent foreclosing review of the merits of a military discharge decision and precedent permitting review of equal protection claims in a challenge to a military discharge decision.  *Compare Murphy*, 993 F.2d at 874 (forbidding a review of the merits of discharge decisions), with *Berkley*, 287 F.3d at 1084 (reviewing military discharge decisions for equal protection violations).  It is clear that equal protection claims were considered in *Berkley*, and that racial and gender preferences in that case were subject to strict scrutiny.  287 F.3d at 1091.  This court has applied rational basis review to an equal protection claim in the military discharge context where there was no suspect classification at issue.  *Loomis v. United States*, 68 Fed. Cl. 503, 521-22 (2005).  From these authorities, it appears that an alleged violation of constitutional rights, in some cases, permits this court to review certain aspects of a military discharge that are not purely procedural.  *See, e.g.*, *Berkley*, 287 F.3d at 1084 (considering whether a discharge policy was discriminatory); *Woodward*, 871 F.2d at 1072 (noting that "[w]hile . . . the Secretary's discretion . . . is generally unfettered, employment actions claimed to be based on constitutionally infirm grounds are nevertheless subject to judicial review"); *see also Fisher*, 402 F.3d at 1177 (explaining that the court's limited role in reviewing military personnel decisions is "to ensure that the decision is made in the proper manner").

fulfillment of assigned tasks.[18]  It is of no consequence that some of the factual underpinnings of the ERB process might have been erroneous.  *See Briggs*, 331 F.3d at 1318.  At a minimum, the facts adduced by the Navy were reasonably conceived, and the predicted success of the ERB to address over-manning issues was a rational speculation.  *See id.*  To the extent that plaintiffs raised an equal protection challenge to their discharges, and to the extent the court may consider such a claim, *see supra* note 17, the court finds no violation of the equal protection guarantees in the Due Process Clause of the Fifth Amendment in this case.

## CONCLUSION

Counts IV and VIII of the complaint, as well as any retirement pay claims, independent constitutional claims or ERISA claims, are dismissed without prejudice for lack of jurisdiction.  Plaintiffs' challenge to the merits of their discharges is dismissed with prejudice for failure to state a claim, because this challenge is nonjusticiable.  Plaintiffs' claim for back pay and allowances is dismissed with prejudice based on the court's review of the administrative record.

For the foregoing reasons, it is hereby **ORDERED** that:

(1)  Defendant's Motion to Dismiss, Or, in the Alternative, Motion for Judgment Upon the Administrative Record, filed October 15, 2012, is **GRANTED**;

(2)  Plaintiff's Motion to Certify Class Action, filed in two separate docket entries on August 16, 2012, is **DENIED** as moot;

(3)  Plaintiff's Motion to Supplement the Administrative Record, filed April 26, 2013, is **DENIED**;

---

[18]/  Nothing in plaintiffs' proposed supplements to the administrative record in this case would alter the court's determination that the ERB process survives deferential, rational basis review.  At most, these documents might show that the Navy erred, to some degree, in its analysis of its staffing needs and in its predictions of the success of the ERB program.  Such errors, even if true, could not support a successful equal protection claim under the deferential, rational basis review required here.  *See, e.g.*, *Briggs*, 331 F.3d at 1318; *Woodward*, 871 F.2d at 1077.

(4)    The Clerk's Office is directed to **ENTER** final judgment in favor of defendant, **DISMISSING** the complaint as follows:

    (a)    Counts IV and VIII of the complaint, as well as any retirement pay claims, independent constitutional claims or ERISA claims, are dismissed **without prejudice** for lack of jurisdiction;

    (b)    Plaintiffs' challenge to the merits of their discharges is dismissed **with prejudice** for failure to state a claim;

    (c)    Plaintiffs' claim for back pay and allowances, based on the court's review of the administrative record, is dismissed **with prejudice**;

(5)    No costs.

/s/Lynn J. Bush
LYNN J. BUSH
Judge

30